UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ERNEST JORD GUARDADO

Plaintiff,

v.

STATE OF NEVADA, *et al.*,

Defendants.

Case No. 2:17-CV-00879-JCM (BNW)

ORDER

Presently before the court is former NDOC director James Dzurenda, former assistant warden William Sandie, former assistant warden Tara Carpenter, and caseworker Bruce Harkreader's (collectively "NDOC defendants") motion for summary judgment. (ECF No. 58).

Also before the court are pro se plaintiff Ernest Jord Guardado's motions to stay summary judgment (ECF No. 63) and to lift the stay (ECF No. 98).

**I.  BACKGROUND**

Inmate Ernest Guardado alleges that NDOC defendants transferred him from Lovelock Correctional Center ("LCC") to the "more restrictive" High Desert State Prison ("HDSP") in retaliation for filing grievances against correctional officers and calling them liars. (First Am. Compl., ECF No. 73 at 4).

1

NDOC defendants now move for summary judgment on multiple grounds. (ECF No. 58 at 2). Plaintiff Guardado filed a response (ECF No. 100), to which NDOC defendants replied (ECF No. 101).

## II.  LEGAL STANDARD

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome

---

[1] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In other words, the opposing party must show that a judge or jury has to resolve the parties' differing versions of the truth. *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial. *Anderson*, 477 U.S. at 249.

### III.  DISCUSSION

#### a. First Amendment Retaliation Claim

Inmates have a First Amendment right to file prison grievances and vindicate their civil rights in court. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). To prevail on a First Amendment retaliation claim, an inmate must show that (1) a state actor took some adverse action (2) because of (3) the inmate's constitutionally protected speech and (4) that adverse action chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal. *Id.* at 567–68. Courts must be wary of "excessive judicial involvement in day-to-day prison management." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)); *Bradley v. Hall*, 64 F.3d 1276, 1280 (9th Cir. 1995) ("[I]t is not our job to second guess the details of prison management.").

The adverse action must chill or silence a person of ordinary firmness from engaging in protected speech. *Rhodes*, 408 F.3d at 568–69; *see also Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 2003). The mere denial of a prison grievance is not

3

enough to chill a person of ordinary firmness. *Allen v. Kernan*, No. 3:16-cv-01923-CAB-JMA, 2017 WL 4518489, at *9 (S.D. Cal. Oct. 10, 2017); *Stockton v. Tyson*, 2011 WL 5118456, at *2–3 (E.D. Cal. Oct. 27, 2011). But an implied threat of punishment is enough to chill if it is made in retaliation for filing a grievance. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009); *see also Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer" after an inmate's complaints about the law library were enough to support a retaliation claim).

Each state actor must have been aware of the inmate's protected speech and harbored a retaliatory motive. *Pratt*, 65 F.3d at 808–09. Retaliatory motive may be revealed by suspect timing along with other circumstantial evidence. *See Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003); *Pratt*, 65 F.3d at 808 (holding that "suspect timing" of an inmate's transfer alone cannot support an inference that the transfer was retaliatory).

### b. NDOC Defendants' Motion for Summary Judgment

NDOC defendants move for summary judgment on multiple grounds. (ECF No. 58 at 2). They argue that there is no genuine issue of material fact that (1) Guardado's transfer from LCC to HDSP was not in retaliation for his grievances, that (2) there is no genuine issue of material fact that they did not personally participate in the alleged constitutional violation, and that (3) even assuming Guardado's constitutional right under the First Amendment was violated, they are entitled to qualified immunity. (*Id.*).

Guardado argues that (1) the timing of the transfer from LCC to HDSP 17 days after the filing of his first level grievance was suspect (ECF No. 100 at 3), that (2) there is genuine dispute over the reasoning and motive behind his transfer (*Id.* at 3-5), and that (3) NDOC defendants are not entitled to qualified immunity since "the prohibition against retaliatory punishment" is clearly established law (*Id.* at 15), *inter alia*.

"Suspect timing of an inmate's transfer alone cannot support an inference that the transfer was retaliatory." *Pratt*, 65 F.3d, at 808. Guardado proffers no admissible evidence to create a genuine issue of material fact that his transfer was retaliatory.

4

There is some dispute in the record over whether the transfer was for reasons of "depopulation," an "inmate swap," or by virtue of Guardado's "listed enemies."[2] This dispute is immaterial, however, since all three of these transfer reasons are legitimate correctional goals. What's more, it is undisputed that *none* of the NDOC defendants participated in the decision of transfer (ECFs No. 58 at 3-4, and No. 100 at 9-10) or were personally involved in the alleged constitutional violation. (ECFs No. 58 and 100 *in passim).* This is fatal to establishing the first two elements of a First Amendment retaliation claim.

In regard to the "adverse action" element, NDOC defendants state that Guardado's inmate file shows he is incarcerated at "the same custody level" at HDSP. (ECF No. 58-1 at 1, Carpenter Decl., ECF No. 58-2 at 2) In contrast, Guardado states, with specific examples, how HDSP is in fact "stricter and harsher" (ECF No. 100 Ex. B Declaration of Ernest Jord Guardado).[3] He also provides multiple inmate declarations alleging that HDSP is used as a threat of transfer for "problem" inmates and/or "retaliation for inmates filing grievances at LCC" (*Id.*, Exs. N–R). This court has previously found a colorable retaliation claim where an inmate stated that "[t]he conditions at [a specified prison] are less favorable . . . and transfer to [this prison] is generally regarded by both inmates and NDOC officials as a punishment"). *Matlean v. Dzurenda*, No. 2:19-cv-01498-APG-DJA, 2020 WL 8551833, at *5 (D. Nev. Aug. 24, 2020). But even drawing inferences in a light most favorable to Guardado for the adverse action element, he still fails to establish a genuine issue of material fact for the four remaining elements of his retaliation claim.

---

[2] NDOC Defendants state that Guardado's inmate file states his transfer "was a part of a swap between LCC and HDSP" (ECF No. 58 at 5, ll. 3-4); just a few lines later they state it was "for depopulation." (*Id.* ll. 10-11). Further, one of Guardado's inmate grievance reports intimates that one of the reasons for the transfer was the presence of "multiple enemies on LCC yard, and none at HDSP." (ECF No. 100 at 3).

[3] E.g. Only given two to three hours of tier time per day at HDSP when he received nine to ten hours a day at LCC. Or only three hours per week of yard time at HDSP when he received eight hours a day at LCC. Guardado was also subjected to verbal, mental, and physical assault by two correctional officers at HDSP due to his transfer, to which he filed a civil complaint that ultimately settled. Plaintiff also lost 240 work days which impacts his parole eligibility and expiration date, subsequently extending his prison sentence. (ECF No. 100 at 4-5).

Guardado has not pointed to any "specific facts" in the evidentiary record refuting the NDOC defendant's assertions that none of them were involved in the decision to transfer him. Additionally, Guardado has not supplied any evidence that even remotely tends to prove NDOC defendants were a part of the alleged constitutional violation *ab initio.*

Because Guardado has not sufficiently established a genuine issue of material fact for essential elements of his First Amendment retaliation claims, and because NDOC defendants have satisfied their burden in presenting sufficient evidence to entitle it to a directed verdict at trial, summary judgment for NDOC defendants is GRANTED.

The court does not need to reach the qualified immunity issue due to its judgment on the First Amendment retaliation claim.

IV.  **CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Guardado's motion to stay summary judgment (ECF No. 63) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Guardado's motion to lift stay (ECF No. 98) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that NDOC defendants' motion for summary judgment (ECF No. 58) be, and the same hereby is, GRANTED.

The clerk shall enter judgment and close this case.

DATED September 23, 2021.

UNITED STATES DISTRICT JUDGE